IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 17-00488-SOM-01 |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT |
| | ) | JEFFREY STEWART'S SECOND |
| | ) | MOTION FOR COMPASSIONATE |
| | ) | RELEASE BUT TEMPORARILY |
| vs. | ) | STAYING ORDER TO ALLOW SMOOTH |
| | ) | TRANSITION OUT OF BUREAU OF |
| JEFFREY STEWART, | ) | PRISONS CUSTODY |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT JEFFREY STEWART'S
SECOND MOTION FOR COMPASSIONATE RELEASE
BUT TEMPORARILY STAYING ORDER TO ALLOW SMOOTH
TRANSITION OUT OF BUREAU OF PRISONS CUSTODY**

**I.      INTRODUCTION.**

This is Defendant Jeffrey Stewart's second motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  The primary basis for his earlier motion was the COVID-19 pandemic. This court denied that motion, determining that he had not demonstrated that extraordinary and compelling circumstances warranted the requested reduction in his sentence.  While Stewart's obesity and his hypertension made him vulnerable to complications if he contracted COVID-19, the court reasoned that that risk was tempered by his age and his vaccination status. The court was also concerned about Stewart's extensive criminal history and by past violent acts.  *See* ECF No. 66.

Stewart's second motion presents drastically different circumstances.  Since his first motion, Stewart has suffered a

series of strokes, has been in a medically induced coma, has had part of his skull removed to relieve pressure on his brain, and has become partially paralyzed.  While the court cannot determine whether Stewart will ever recover from these conditions, Stewart cannot presently take care of himself and needs assistance with many daily tasks.  Under these circumstances, Stewart is no longer a danger to the community and the possibility of recidivism is low.  The court now concludes that Stewart has demonstrated that extraordinary and compelling circumstances warrant a requested reduction in his sentence.  The court therefore reduces his sentence of imprisonment to time served, with all other terms and conditions of his judgment remaining unchanged unless otherwise modified by this court.  As set forth below, however, this order is stayed for up to ninety days to allow Stewart to be safely released from Bureau of Prisons custody.

II.      **BACKGROUND.**

        Stewart, who is 58, is incarcerated at Rochester FMC and has a scheduled release date of July 28, 2027. https://www.bop.gov/inmateloc/ (input Register No. 10130-022).

        At the beginning of the year, Stewart was incarcerated at Stafford FCI.  On January 3, 2022, he was sent to the Mount Graham Regional Medical Center for "stroke-like symptoms" and was diagnosed with having had an ischemic stroke and middle cerebral

artery thrombosis.[1]  *See* ECF No. 81, PageID # 920.  He was then sent via aircraft to the Tucson Medical Center.  *Id.*  Apparently, Stewart's ischemic stroke converted to a hemorrhagic stroke with seizures.  *Id.*, PageID # 898.

On January 6, 2022, Stewart had a craniotomy, was comatose, and was in critical condition.  *See* ECF No. 81, PageID # 917.  On January 14, 2022, Stewart was diagnosed with multiple untreatable lung emboli.  *Id.*, PageID # 908.  The clinical notes stated, "Physician states, and I agree, that [inmate's] life expectancy is < 6 mos.  More likely sooner.  Even if [inmate] survives longer than 6 months, return to normal functioning and self-performing activities or daily living are medically improbable."  *Id.*

On January 19, 2022, Stewart was extubated and was able to breathe on his own.  *See* ECF No. 81, PageID # 903.  In the days after that, he was still being fed via a tube, had slurred speech, and, although lethargic, was able to move the right (but not the left) side of his body.  *Id.*, PageID # 901-02.  On January 23, 2022, the neurosurgeon noted that Stewart might be a candidate for a cranioplasty in 10 to 12 weeks, if he survived. *Id.*, PageId # 899.

---

[1] While this court would normally refrain from discussing in detail a person's medical history in a publicly accessible document, that history has already been extensively discussed in briefs filed by Stewart that are open to the public.

By the end of January 2022, Stewart was astonishingly stable enough to be transferred to a long-term care facility, Cornerstone Hospital Southeast in Arizona.  *See* ECF No. 81, PageID # 888.  At that time, he responded to his name and could follow some commands, but his left side was not fully functional. *Id.*  This continued into early February.  *Id.*, PageID # 882.

On February 9, 2022, Stewart began responding more, asking and answering questions, and undergoing speech therapy. On February 10, 2022, Stewart continued responding to questions and began physical therapy.  *See* ECF No. 81, PageID #s 880-01.

On February 16, 2022, Stewart was responsive and communicating over the phone.  He was also sitting up in bed, but was unable to move on his own.  *See* ECF No. 81, PageID # 876.

By March 1, 2022, Stewart was on a puree diet, which he was tolerating.   He was also wearing a helmet when out of bed to protect the area that would normally have been covered by his skull.  *See* ECF No. 81, PageID # 843.

On March 3, 2022, Stewart was transferred to Haven Health of Stafford.  He was able to go to the restroom if assisted by 2 people.  *See* ECF No. 81, PageID # 840.  On March 8, 2022, his diet was changed to soft chopped meat with thin liquids.  *Id.*, PageID # 836.

By the end of March 2022, Stewart was able to walk with a gait belt and assistance.  However, he still had a mild left-

side facial droop and lacked strength on his left side.  *See* ECF

No 81, PageId #s 805, 822.

On March 29, 2022, Stewart was transferred to Rochester

FMC, where he remains.  *See* ECF No. 83, PageID # 934.  He still

wears his protective helmet when out of bed because he has not

had his bone flap replaced.  *See id.*, PageID # 935.

On April 22, 2022, Stewart tested positive for COVID-

19, but was asymptomatic.  *See* ECF No. 81, PageID #s 753-54, 869.

Apparently, Stewart's therapy stopped while he was in isolation

for COVID-19, but will resume when that isolation ends.  *See* ECF

No. 83, PageID # 935.

**III.      ANALYSIS.**

Stewart's compassionate release request is governed by

18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the
> defendant after the defendant has fully
> exhausted all administrative rights to appeal
> a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse
> of 30 days from the receipt of such a request
> by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of
> probation or supervised release with or
> without conditions that does not exceed the
> unserved portion of the original term of
> imprisonment), after considering the factors
> set forth in section 3553(a) to the extent
> that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons
> warrant such a reduction . . . .
>
> and that such a reduction is consistent with

> applicable policy statements issued by the
> Sentencing Commission.

In other words, for the court to exercise its authority under
§ 3582(c)(1)(A), it must (1) find that the defendant exhausted
his administrative remedies or that 30 days have passed since he
filed an administrative compassionate relief request; (2) also
find, after considering the factors set forth in section 3553(a),
that extraordinary and compelling reasons warrant a sentence
reduction; and (3) find that such a reduction is consistent with
the Sentencing Commission's policy statements (assuming there are
any policy statements applicable to this motion).  *See United
States v. Balgas*, 2021 WL 2582573, at *1 (D. Haw. June 23, 2021)
*United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10,
2020).

> **A.    Stewart Has Satisfied the Time-lapse Requirement
> of 18 U.S.C. § 3582(c)(1)(A).**

On April 4, 2022, counsel for Stewart asked the warden
at his facility for compassionate release.  *See* ECF No. 78-1.
More than 30 days have now passed since that request for
compassionate release, and there is no dispute that Stewart has
satisfied the time-lapse requirement of 18 U.S.C.
§ 3582(c)(1)(A).  *See* ECF No. 83, PageID # 932 ("The government
agrees that Stewart has satisfied the administrative exhaustion
requirement set forth in 18 U.S.C. § 3582(c)(1)(A).").

**B.**    **This Court Has Discretion in Determining Whether Extraordinary and Compelling Reasons Justify a Reduced Sentence.**

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction.  In orders addressing compassionate release motions in other cases, this judge has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release.

This judge has also stated that, in reading § 3582(c)(1)(A) as providing for considerable judicial discretion, she is well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the discretion given to courts when Congress amended the statute to allow inmates themselves to file compassionate release motions. *Balgas*, 2021 WL 2582573, at *2; *United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); *United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020). Specifically, this court has recognized that an Application Note to a relevant sentencing guideline is outdated.  This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are now at odds with the

congressional intent behind recent statutory amendments. *Balgas*,
2021 WL 2582573, at *2; *see also United States v. Brooker*, 976
F.3d 228, 235-36 (2d Cir. 2020) ("[W]e read the Guideline as
surviving, but now applying only to those motions that the BOP
has made."); *cf. United States v. Ruffin*, 978 F.3d 1000, 1007-08
(6th Cir. 2020) (noting that some courts have held that the
Application Note is not "applicable," but not deciding the
issue).

　　　　The Ninth Circuit has expressly recognized that there
is no applicable Sentencing Commission policy statement governing
compassionate release motions filed by defendants under
§ 3582(c)(1)(A).  Nevertheless, while the Sentencing Commission's
statements in U.S.S.G § 1B1.13 are not applicable policy
statements that are binding on this court, they may inform this
court's discretion.  *See United States v. Aruda*, 993 F.3d 797,
801-02 (9th Cir. 2021) (per curiam).

> **C.   Stewart Has Demonstrated That Early Release Is**
> **Appropriate and that the Requested Sentence**
> **Reduction Is Consistent with Sentencing Commission**
> **Policy Statements.**

　　　　Stewart contends that extraordinary and compelling
circumstances justify his early release.  This court agrees.
Given Stewart's recent medical issues, "[t]he government concedes
that Stewart has a serious physical or medical condition that has
diminished his ability to provide self-care."  ECF No. 83, PageID

# 936; *see also id.* PageID # 925 ("The government concedes that

as a result of Stewart's recent stroke he is currently unable to

provide complete self-care, regardless of where he resides.").

The Government argues that, under Application Note 1(A) to

U.S.S.G. 1B1.13, such a serious "physical or medical condition"

is insufficient to support compassionate release unless Stewart

"is not expected to recover."[2]  The Government contends, "The

extent of Stewart's expected recovery . . . is not yet known."

ECF No. 83, PageID # 936.  The Government advocates for denying

the present motion until Stewart has exhausted all treatment

options such that his "baseline functional status" can be

determined.  *See* ECF No. 83-1, PageID # 942.

        The Government provides no time line for when all

treatment options will have been exhausted such that Stewart's

baseline can be definitively established.  While there is no

dispute that Stewart has shown improvement in his condition, he

still cannot move without assistance, has part of his skull

missing, and is partially paralyzed on his left side.  The court

declines to deny compassionate release based on the mere

---

[2] Application Note 1(A) to U.S.S.G. 1B1.13 provides that
"extraordinary and compelling reasons exist" when "[t]he
defendant is . . . suffering from a serious physical or medical
condition . . . that substantially diminishes the ability of the
defendant to provide self-care within the environment of a
correctional facility and from which he or she is not expected to
recover."

possibility that Stewart might improve at some indeterminate time in the future, even if incrementally.  In so ruling, this court recognizes that the Sentencing Commission's statements in U.S.S.G § 1B1.13 are not applicable policy statements that are binding on this court, but that they may inform this court's discretion. *See Aruda*, 993 F.3d at 801-02.

In this case, the record does not definitively establish whether Stewart will or will not recover.  Instead, the record reflects only that Stewart cannot take care of himself and likely has a long recovery, if he recovers at all.  This court is often called upon to rule on an incomplete or imperfect record. It does so here.  Given his present situation and the lack of a time frame for any possible recovery, this court determines that Stewart has demonstrated extraordinary and compelling reasons justifying relief from his sentence of incarceration.

There is no dispute that Stewart is suffering from serious physical and medical conditions that substantially diminish his ability to provide self-care within the environment of a correctional facility.  Additionally, the record does not establish that Stewart is expected to recover from his conditions.  While the Government urges this court to wait to see whether Stewart might improve, that appears to this court to negate the concept of compassionate release.

In evaluating whether early release is justified, this

court also must consider the factors set forth in § 3553(a).  Two considerations were particularly relevant in the court's denial of Stewart's earlier motion.  The first was the amount of time Stewart had served.  The second was Stewart's substantial criminal history, including a history of domestic violence. Those considerations are less relevant now.  First, Stewart has now served approximately 48 months of his 130-month sentence. While this is only a fraction of the overall sentence (about 37%), this court never intended to punish Stewart through incarceration involving the need for assistance to take care of himself.  Second, given that Stewart is partially paralyzed (or at least has significantly reduced function of the left side of his body), the likelihood that he will be a danger to the community is significantly reduced.

Under § 3582(c)(1)(A), only extraordinary and compelling reasons can justify a reduction in an inmate's sentence.  Having considered Stewart's physical and medical history and needs, the amount of time remaining on his sentence, and his personal history, this court determines that the reasons raised by Stewart qualify as extraordinary and compelling reasons warranting a reduction in his sentence.  This court also determines that the requested reduction in sentence is consistent with applicable policy statements issued by the Sentencing Commission.

11

**III.        CONCLUSION.**

Stewart's request for compassionate release under 18

U.S.C. § 3582(c)(1)(A) is granted.  Stewart's Second Motion For

Compassionate Release (ECF No. 78) is **GRANTED** to the extent that

his term of imprisonment is reduced to **Time Served.**

Further, this order is stayed for up to ninety days,

allowing for Stewart to remain in BOP custody, to give Stewart

time to be accepted and to have a confirmed bedspace at a

rehabilitation facility or other skilled nursing facility, to

allow for appropriate travel arrangements to be made, and to

ensure that Stewart's release plan is verified and provides for

his safe release.  Stewart shall be released as soon as all the

above conditions are satisfied, and it is safe for him to travel.

If more than ninety days are needed to make appropriate

arrangements and ensure Stewart's safe release, the parties shall

immediately notify the Court and show cause why the stay should

be extended.

Upon release from custody, Stewart **SHALL** begin his

5-year term of supervised release.  Stewart **SHALL** abide by all

the mandatory, standard, and special conditions of supervised

release previously imposed, as well as the following additional

special condition:

> 7.    Following release from imprisonment, you
> must reside at Encompass Health

12

Rehabilitation Institute located in Tucson, Arizona, or an alternate inpatient rehabilitation facility, as approved by the probation officer.  You are responsible for the costs of inpatient rehabilitation at an approved facility.  You must keep the probation officer updated monthly on your level of care and prognosis and must have the probation officer's approval to transfer to another comparable facility or be discharged from the approved facility.

It is so ordered.

DATED: Honolulu, Hawaii, May 27, 2022.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Stewart*, Cr. No. 17-00488-SOM-01; ORDER GRANTING DEFENDANT JEFFREY STEWART'S SECOND MOTION FOR COMPASSIONATE RELEASE BUT TEMPORARILY STAYING ORDER TO ALLOW SMOOTH TRANSITION OUT OF BUREAU OF PRISONS CUSTODY